The case today is Marasco & Nesselbush, LLP v. Tara Collins et al, appeal number 201397. Mr. Baldwin, you may begin when you're ready. Good morning, and may it please the Court. My name is Timothy Baldwin on behalf of the Appellant Marasco & Nesselbush, LLP. Your Honor, may I reserve two minutes for rebuttal? Yes. Thank you, Your Honor. I want to start by emphasizing that the relief Marasco & Nesselbush seeks in this complaint is actually quite narrow. We are simply seeking a remedy that will require the SSA, the Social Security Administration, to pay fees directly to Marasco & Nesselbush for work that the law firm's associates, attorneys performed, and that Marasco & Nesselbush paid its attorneys for. The complaint is not seeking a ruling that would require the Social Security Administration to recognize law firms for all purposes. We are not seeking to overhaul or shift the Social Security Administration's regulatory regime with respect to attorneys. Marasco & Nesselbush is a Rhode Island law firm that has handled a high volume of Social Security disability cases for 20 years. It's Rhode Island's largest Social Security disability law firm, serving approximately 1,000 claimants per year. Its lawyers are well-trained in disability law. I'd like you to please clarify what you just said. You talked about the narrow relief that you're seeking. I understood that you were challenging the rationality, the arbitrariness of the rules of the administration that preclude representation by entities. Going forward, you were hoping that that rule would be abrogated and would no longer apply to this law firm and others. I think you basically want a declaration that that rule is irrational and should no longer be in place. I thought that's what you were asking for. Referring specifically to the complaint, the rationale or the relief that we're seeking is more narrow than that. We're simply seeking a declaration or remedies such that the Social Security Administration would be authorized or would pay fees directly to Marasco & Nesselbush itself as an entity and as a law firm. We are not seeking a remedy such that the law firm itself or any other law firm would represent claimants in front of the Social Security Administration. Where would that money come from? It would not come directly from the government. We are not seeking damages from the government or the Social Security Administration. We are seeking to have the fees which are withheld from claimants paid to Marasco & Nesselbush as a firm as opposed to those fees paid to Marasco & Nesselbush's associate attorneys, which is currently how the regime works. I'm sorry to push this, but you believe the representation limitation in place, the rule that says that it has to be an individual attorney who represents a claimant and law firms cannot. You're okay with that? You just want it understood that the money for the work that was done by the individual attorney, that that can go directly to the law firm rather than passing through the individual attorney? That's all you're looking for? Yes, that's what we're looking for, your honor. Okay. Now, with respect to Marasco & Nesselbush, as I mentioned, it's a different kind of contract that allowed the Social Security to pay the law firm. The law firm wouldn't honor that contract. If you entered into a contract with your associate that allowed Social Security to pay that attorney's fee directly to the law firm, the Social Security Administration would not honor that? Under the current regulatory regime, that's correct. The Social Security Administration only allows payments directly to individual attorneys under the current regime. So, with respect to the attorneys that work at Marasco & Nesselbush, they are well-trained. I'm sorry. I just want to follow up on that very briefly. I apologize. So, does the firm here use an assignment? Does it have these associates assign their right to those fees over? Is there an assignment in place? Yes. So, there's a power of attorney form, which essentially says that the associate attorney does not have a right or interest in the fees. Is there a contractual assignment? Is there a contract in place, a typical assignment? No, there's a power of attorney form. Do you know what the Social Security Administration does? Do you know? Have they ruled on that? My understanding is that they do not prohibit assignments, generally speaking, so that they will allow an arrangement under which an associate attorney can assign the fees to a law firm. Thank you. So, why haven't you tried that? Well, that's typically how the law firm does generate its fees. Fees come in to the individual attorneys. They then go into joint bank accounts between the associate attorney and the law firm, and then from there, they're then transferred to the law firm's accounts. I understand what you have put in your brief, but the question is different. If there was an assignment contract, would the Social Security Administration respect that and pay the individual associate's fee directly to the firm? No, I believe not, Your Honor. I believe under the Halleck's and Palm rules that the Social Security Administration would not honor that and would not directly pay the law firm. I'm really confused, counsel, by what seems to me a disconnect between a lot of your briefing and what you're telling us here today. A lot of your briefing went to the proposition that it's foolish to not allow law firms to the accountability that the Social Security Administration worries about in insisting on personal representation can still be achieved if law firms represent them. That's a good part of what your brief was all about, and now you're telling us, no, no, we don't care about any of that. All we really care about is the ability of the Social Security Administration to deposit a check into the law firm account. And that really surprises me that in the end that's all this is about, because as my colleagues are suggesting with their questions, I believe there are ways to achieve that. In fact, the Social Security Administration suggests ways that you might be able to accomplish that. So what seems to be a fairly large consequential issue seems to be reduced to, not very much. Well, with respect to Murasko and Nusselbusch, it is a significant issue because it has resulted in a significant loss in fees when Murasko and Nusselbusch's attorneys, associate attorneys, enter service with the government. We estimate that there's about $15,000 in escrow right now that's tied up based on funds that... How much again, please? Sure. $15,000 in escrow, and then on top of that, about $70,000 overall based on the attorneys that entered government service. So that is a significant amount of money to Murasko and Nusselbusch with respect to the fees that it wasn't able to recoup based on its attorneys entering government service. And with respect to the attorneys that entered government service, our basic position is that with respect to the ethics statute, which the government relies upon, that really is a red herring because if the Social Security Administration was able to pay directly to Murasko and Nusselbusch, there would be no need for any sort of assignment or any problem with respect to the ethics statute. So essentially, our core argument is that it's irrational and arbitrary and capricious for the government not to recognize law firms for the purpose of payment for work that has been performed by associate attorneys in the law firm. I mean, your issue with the former associates who joined the Social Security Administration is a little different though, because it's my understanding that once they join, they have to give up their individual rights to any fees that they incurred. Isn't that correct? Yes, the government's position is that they have to waive fees when they enter government service if the fees in individual cases have not been authorized at the time that the associate attorney enters government service. And so don't you necessarily have to argue then that the law firm should be recognized? Otherwise, those fees are gone. Well, not if those fees were the property of the law firm to begin with. And so it's our position that the associate attorneys, like attorneys in any other law firm, are paid on salary. Morass Condestribus has compensated those associate attorneys for their work. And the revenue coming from the Social Security Administration is the property of the law firm, not of the associate attorneys. So that if the Social Security Administration recognized law firms for the purposes of payment of fees, then there would be no problem with associate attorneys entering government service. And with respect to the government's refusal to recognize law firms for the purposes of payment, that really has resulted in significant burdens for the law firm, such that the law firm has to take really extraordinary measures to protect its interests in order to receive fees and essentially be able to practice before the Social Security Administration. As I mentioned, it has to maintain joint bank accounts with its associates. It has hire a fee collector at a cost of roughly $40,000 per year. It has to untangle tax problems that come up with respect to income either being allocated to the law firm or the individual attorney. It has to keep track of associates where they go years after they leave the firm. And Social Security cases in and of themselves can take years. And then fee petitions can take years after that. It has to update fee agreements whenever a new attorney comes in. And it has to when the Social Security Administration won't agree to make payments directly to the firm. Could you clarify for me how this tax reporting goes? I assume that the individual associate gets some kind of tax form from Social Security, but you say that there's also some kind of reporting for the law firm. What is that? Yes, my understanding is that there's a form that goes, and I believe it's developed jointly by the IRS and the administration. One form goes to the law firm. A form also goes to the associate attorney and essentially... For the same amount? Yes. So the fees are initially essentially assigned or allocated to the associate attorney and the firm and the income to the firm for tax reporting purposes. So that gets to our rationality argument in the sense that the government... What's reported for the firm? What's reported is the fees that come in through the individual attorneys. That is treated as income of the law firm. So let's say for an individual attorney, they have $100,000 in fees generated from claiming cases in a year. On that form, that amount can be treated as income to the law firm itself and not to the individual attorney. Counselor, can you identify the specific rule that you would like to have abrogated so that fees can be paid directly to a law firm? Sure, Your Honor. So there are two places for that. One is in 20 CFR 404-1700-A-Sec. There are rules which govern the payment for representation of claimants. They refer to attorneys and other persons. Persons under the Dictionary Act 1 U.S.C. 1 can be defined to the regulation itself does not definitively state whether or not persons can include law firms or not. And for that, you need to go into what are called the HALEX rules. And it's really in the HALEX rules where it states that a law firm cannot petition for fees on behalf of individual claimants. For example, HALEX section I-1-2-53 states specifically that another person or firm cannot petition for attorney's fees on behalf of an individual claimant. And if there were to be, you keep talking about, at least there should be a trial because there are genuine issues of material fact as to the rationality of the provisions you've identified. What would that trial look like? And would that be before you seem to suggest a jury? Are you suggesting that there should be a jury trial that would assess the rationality of the regulation that you've identified? Well, at this stage, Your Honor, we're at Rule 56. So it's our position that all we need to do is create a dispute of material fact. And I understand... I think it would probably be the judge. I haven't looked deeply into how an actual trial would work on a constitutional claim of this sort. I think it probably would be more of an equitable claim than a claim at law. But I do believe that even though it's a difficult standard, and I do understand that if it's arguable that there's a rational basis, that in of itself is not enough to satisfy surviving summary judgment. But what we would contend is that if it's arguable, that it's arguable almost sort of like in a DFA claim, you know, whether it's reasonable, that it's reasonable. In that circumstance, that summary judgment should be denied. And I'm sure Your Honor has seen that we did cite cases in our brief where there is a dispute based on the proffered evidence that the government shows for a rational basis such that there can be a dispute of material fact over whether or not there's a rational basis. And here we believe that we have created a dispute of material fact based on, number one, the government does recognize the fact that the income for individual attorneys is the income of the law firm itself with respect to tax reporting. It also tracks law firms with respect to fee agreement purposes so that in some cases it won't approve a fee agreement payment if attorneys for a claimant come from different firms. And then the government also does pay firms in court proceedings directly. So it does pay, the government does pay Murasko and Nesselbush directly in a district court proceeding. So it's our view that the government, it's arguable that there is no rational basis for the government's asserted basis of efficiency and oversight of claimants, oversight of attorneys, excuse me. On your APA claim, which the district court dismissed, is there any difference between the arbitrary and capricious argument you would make if you were able to go forward with your APA claim and your lack of rationality on the constitutional claim, the substantive due process claim? Are they really the same argument as you see it, or is there some difference between them? Well, I think the legal standard is a little bit different, but I do agree with the government to the extent that for those particular claims, if it's not arbitrary and capricious, then it certainly satisfies equal protection and substantive due process. But with respect to the equal protection class of one claim, I think that that would require different analysis. Judge Lopez, follow up. I'm fine, thank you. Judge Thompson, any additional questions? Thank you, counsel. You've reserved some time. We'll hear from Mr. Fan. Good morning, Your Honor. May it please the court, Dennis Fan on behalf of the United States. I want to pick up on a question that Judge Thompson asked of whether Murasko and Nesselbush, the plaintiff, would in fact need to challenge the fact that law firms cannot be representatives. The answer to that question is yes. To succeed in any claim whatsoever, you first need to be a representative. Let me just explain a little bit of what the system looks like and why that's the case. What happens is a claimant needs to appoint you as a representative. Once you're in an agency proceeding, a non-attorney or an attorney representative, you provide representational services. Then at the end of the day, when you're done with your representation, the statute 42 U.S.C. 406 has various provisions that say only those who have provided representational services can get representative fees out of a claimant's benefits. You have to claim it and this is money you're taking away on the basis of I am a person and entity, you know, whatever it might be that has provided representational services. So 406A2 about the fee agreement process says, you know, you can get a fee agreement if you've provided quote services with respect to the claim. 406A1 says you can petition. But law firms always work through their attorneys. That's absolutely true, Your Honor. And there's no question at all that Marasco and Esselbush has attorneys who have represented claimants in social security proceedings. They've done that successfully. They've gotten representatives fees for representing claimants in social security proceedings. And at the end of the day, if there was an assignment agreement, would you pay the law firm? That's actually a really tricky question. I know Your Honor's asked a little bit about that. That's been litigated in various instances. I'll just point out really quickly that there is a statutory prohibition called the Anti-Assignment Act under 31 U.S.C. 3727 that operates in certain circumstances. I mean, certainly what social security, I mean, like the basic point here is the Social Security Administration has no rules about the private contractual relationship between attorneys and their law firms. You know, the attorney, you know, the associate can get attorney's fees, representative's fees, and they could promise it to their law firm. They can that would prohibit the Social Security Administration from paying the law firm. What I'm saying is I think it's when you talk about specifically assignment agreements, assignments of claims against the United States, it's a little bit complicated. I'm not entirely certain about what the answer to that question is. And I'll just be honest about that. The question isn't about, I'm sorry, go ahead, Judge Thompson. You were probably going to say the same thing I was. Well, I was just going to say that the question, one of the questions that we were asking isn't about assignments of claims. It's about assignments to a determined right to payment. Right. And this is not a claim against the U.S. government, as you point out so readily. This is coming from the claimant's benefits for services rendered. So it's not like something hasn't been done on behalf of the claimant. Yeah, I see where you're coming from in the sense of, like, you're saying that this is not perhaps an assignment of the claim against the United States government. This is just, and I, like I said, I am not sure what the answer to that question is. It just sounds hysterical to me. It would just be whose name goes on the check. Right. And I think if you look, for example, on, perhaps let's break this down a little bit further. I mean, like if if Morasco and Nestle, you know, the main problem here was that individuals were not able to, you know, these individuals who entered into government service because of federal ethics rules were not able to request representative fees because, you know, they went into federal service. That's that doesn't really have to do with anything of an assignment at the back end if there was a fee paid, because I think we all agree that if there was a fee authorization and fees were authorized, these individuals could get the payments. And like I was saying, SSA doesn't have any rules that say if you've gotten a fee payment, you know, you can't give it to somebody else. That's just not a role that SSA has. Why does this matter? Why does this matter at all to the Social Security Administration where the check goes? The more I'm hearing about this case, the less I'm understanding as to why it matters to the Social Security Administration where the check goes. I mean, you've just said you really don't care what kind of arrangements that the individual attorney works out with the law firm. You understand that the fees paid will almost surely go to the law firm. So what's at stake in the Social Security Administration in not just having the check go directly to the law firm? Why does that matter at all? So, Your Honor, that's not, I mean, let me, I get that's the point, but I kind of just backing this up a little bit. That's the point. The statute is what provides that only those who represent a claimant can seek representative fees and get direct payment of representative fees. That's not a, that's not something that Social Security cares about individually or that other agencies care about. That's something that within the statute. But counsel, in 2008, you acknowledged that you were, that the administration was considering a regulation that I gather would have allowed payments directly to the law firm. You must not think that you're banned by statute from doing that. Yeah, that's not quite accurate. The administration would have considered a regulation that allowed law firms to be representatives. One of the downstream effects of that is that it provisions that let law firms who in fact provide representational services, where claimants in fact choose to let those law firms provide representational services, then obtain representative fees. So what we're talking about are all sort of downstream effects of a particular choice that SSA has long had on the books, which is that only individuals can be representatives. Once you've made that choice, and once that's a reasonable choice, that's going to have other downstream effects. But the fact that it sometimes has negative downstream effects, that in no way makes other parts of the system unreasonable. So in that sense, I mean, what we have to kind of remember here is these are all sort of... How is this double tax reporting rational? I don't think there is double tax reporting. I mean, if you want to take a look at sort of what the tax reporting requirements are, these are tax reporting requirements by the IRS. SSA has a report on it. You can find it at page 101 of the record. If a law firm in fact obtains money after the associates get authorized and get paid the money, like if you actually get If the law firm, the administrative process is over, there's a need to go into court to protect what's already been won or whatever reason they have to go into court and continue the representation. Then payment can be made, I guess, out of the claimant's fees. Payment can be made directly to the law firm. So why is it okay in that situation? But if it's just the law firm, what's the rationale for that? So that's not an SSA rule either. That's just a separate statutory provision that they're talking about. In fact, they're talking about a different statute altogether. I mean, their complaint references EJA, the Equal Access to Justice Act. But even if they were representing the social, you know, talking about the Social Security Act, we're talking about 406B, which is the fee rules that apply in court. So those are a different set of fee rules. It's not that the agency is like looking at the 406B rules and saying, let's arbitrarily do something different than like what happens in court. The agency is just applying the provisions of 406A. And the provisions of 406A, like, you know, as I kind of was saying, is you have a fundamental interest in ensuring that there's representation, that there's quality representation, that there's accountable representation to these claimants. And that when claimants choose somebody, that they know who they're going to be getting at the end of the day. And that's a choice that might have some number of downstream consequences. But those are downstream consequences that are completely established by statute. And to the extent that that's the complaint, that, you know, we have to do something contrary to statute, that's not a viable claim in any respect. And unless this court has further questions, I'm, you know, I'd urge that you affirm the order. Just one question about your comment about contrary to the statute. I believe that your opponent argued on the basis of that the word person can mean more than an individual. So why would it be contrary to interpret this broader than an individual? Yeah, so the Dictionary Act does talk about persons and it says that, you know, person has a standard meaning that could be not an individual. And that depends on the context of the particular statutory scheme. I think it's pretty, I mean, I'm not saying that's contrary to the statute to have firms be representatives, but that's not a regulatory choice the agency has made. I'm saying it's contrary to the statute for somebody who is not a representative to ask for representative fees, because four of six, A1 and A2 say that unless you have provided representational services, you can't ask for representative fees of some claimant's benefits. You don't have that representation. If a law firm is identified as the representative of the claimant, that would meet the statutory requirement. The disallowance of entities as the representative of claimants, that's entirely a matter of rule and regulation. There's no ground statute for that. Isn't that true? That is exactly true. And sorry if I wasn't clear that in response to Joe's Harris question, there's no, you know, as our reading is, there's not really a statutory limitation on who can be a representative, but there is a regulatory limitation. It seems that the question is being begged. So I'd like to go back to Judge Lopez's question about what's rational about that choice. If it's not required by statute, what's rational about it? So there's a few aspects of this. I think you have to kind of think about this in the broader statutory scheme of SSA being an agency that processes millions upon millions of claims every year, that you want individuals who know what they're getting, and SSA has an interest in ensuring that. SSA has an interest in ensuring that its proceedings run smoothly. Yeah, but why wouldn't a law firm have that same interest? I mean, one requirement for attorneys is that they have malpractice insurance and law firms have malpractice insurance. We're not saying there's no, there aren't other ways to run the system. There certainly are multiple ways in which SSA could have set up the system. You know, all we're saying is this isn't like, you know, if you've ever been to like a debt collection court and somebody comes in with a stack of folders and they don't need to really know anything about a case and they can kind of just say like, John Smith owes $500 and Meredith Smith owes $600 and we'll kind of just keep moving through it. Like as a claimant, as somebody who really needs money, you want to know who, you might want to know who you're getting on a given day. It might not, you know, you might want to know that you're not just getting this associate or that associate and maybe a different hearing has is, you have to kind of talk them through like what the experts at the last hearing said. So does an attorney who practices before the Social Security Administration need something other than a law license? An attorney doesn't, but you don't need, it doesn't have to be an attorney. That's the point. Somebody coming out of law school with a law license could represent a less about Social Security law than a representative who's passed your tests, who's not a lawyer. So I don't understand your rationale. Yeah, I mean, there's, we're not saying that nobody can competently do this. I mean, law firms operate competently all the time. The only question is whether Social Security, the Social Security Administration needs to deal with. You seem to be suggesting that the Social Security Administration has an independent interest in making sure that claimants are properly represented. But if someone coming out of law school with a law license on day one of practice, who's never had any experience in this area can practice before you, that doesn't make any sense. Rationale does not hold up. I think we still would have an interest, even if it were somebody who kind of walked straight out of law school to making sure that they're proper. You wouldn't have a way of insuring it. No, but I mean, this is kind of thinking about big picture rules across the entire scheme. We can't just like place an exception for this particular law firm and say, well, they have competent associates, it seems. And so therefore we'll like, let all of their associates be the ones that represent claimants. I think at the end of the day. You will let incompetent solo practitioners with a law license practice before you're representing a claimant. No, Your Honor, I don't mean that at all. I think what I mean is that there's a system that needs to process lots of claims to get claimants benefits to them on a very timely manner. If there are hiccups in that process, that means people don't get their benefits on time. And SSA certainly has an interest in ensuring that there are fewer of those hiccups that happen. And one way of ensuring that is that if you have somebody who's a claimant, that they have a representative, that they know who that representative is going to be, at least. And that representative has some level of familiarity with the claimant. And certainly having, you know, you can have in terms of talking about, you know, sort of what you might term incompetent attorneys, like having one incompetent attorney is certainly better than having five incompetent attorneys. So in that sense, I don't see that as sort of a reason why the entire scheme is irrational. But as I was saying, I do think the statute makes pretty clear that that fundamental predicate is something that plaintiff here would need to prevail on in order to get the type of relief that they want, which is somehow some type of payment directly to them. Because the statute itself makes clear that only representatives get representative fees out of the claimant's benefits. Thank you. Mr. Baldwin, you have two minutes. Thank you, Your Honor. I'd like to stress that we don't view the regulatory regime as rational when the Social Security Administration already recognizes that the fees that go to individual attorneys is actually income of the law firm. And as made clear in the appendix, I think it's page 311 and onward, there's a report that the Social Security Administration put into the record, which shows that the Social Security Administration has the ability and actually does track where individual attorney's fees go and how they flow to law firms. So... Counselor, can I ask you this, please? This is where I was actually confused by the way you accept a regime where only an individual is identified as the representative as opposed to a law firm. That way a claimant can know who the individual is that's representing them. That doesn't seem to bother you. So, excuse me, just to finish, so long as at the end of the process, if it's understood, say by the Social Security Administration, that that individual attorney is an associate of a law firm and hence the law firm can get the check at the end, then you're fine. Is that correct? You're prepared to accept the fact that representatives have to be identified as individuals so long as in the end, the check can be written directly to the law firm. That's really what you're looking for. Is that all you're looking for? Yes, basically, Your Honor, that is what we're looking for. And I would point out that that's really no different than how practice works in the private sector. For example, if I appear in front of the United District Court for Rhode Island on behalf of a party, I'm the individual attorney appearing before the court. The law firm is not appearing before the court. I am. And then when the representation is done, when it's time to bill the client, it's the firm that bills the client, not me as an individual attorney. It's essentially the same regime that works in private practice is what we're seeking with respect to representation. So I guess you would say to the Social Security Administration, okay, you think that there are benefits for claimants in knowing that an individual is represented, that they know the person to whom they can talk. They'll have more of an individual relationship, perhaps. You're prepared to accept all of that. And you're saying what you're asking for doesn't threaten any of that. Again, this is just about to whom the check is written at the end. Again, is that all you're asking for? I mean, I think in a nutshell, yes. I mean, that's essentially the relief that we're seeking is that for the Social Administration to pay attorney's fees from claimants' benefits directly to the law firm. Do you acknowledge that there might be ways to work around this rule with your own, with your firm's, your client's internal relationships with its associates? So for example, if a fee has been earned as defined by internal firm mechanisms, that when someone leaves the firm, they owe the firm those funds? Well, that's certainly what... The firm could be made whole through internal mechanics, couldn't it? Well, that's certainly what we attempt to do. And we do have to keep track of our former associates in order for that to happen. None of that is necessarily dependent on whether the associate gets the money from the SSA. I mean, there is a way to do this, right? Yes, except with respect to attorneys who enter government service. Well, even then, if you have an internal accounting procedure that says that under your relationship with the associate, the firm will get the money regardless of whether the associate is able to collect it or not. I mean, you can protect yourself to a certain extent, can't you? Yes. Okay. Thank you. Other questions from the panel? Thank you very much, counsel. Thank you. That concludes argument in this case. Attorney Baldwin and Attorney Fan, you should disconnect from the hearing at this time.